Our second case on the call of the docket is agenda number two, case number 114-197 and 114-214, People v. Hudimir Radojcic. Counsel for the appellant, please proceed. Good morning, your honors. My name is Emily Wood. I'm from the Office of the State Appellate Defender on behalf of Hudimir Radojcic. For this court's convenience, I will be splitting my time both in opening argument and in rebuttal with counsel for co-defendant Mark Helfand. May it please the court. We are here today because the state is seeking to use the crime-fraud exception to gain access to attorney-client privileged communications in the hope that they will connect Radojcic to a crime or a fraud. Although this is contrary to DECCR, the appellate court sanctioned this approach, and in doing so applied an overly broad application of the crime-fraud exception, such that the exception now devours the rule. As we know, the attorney-client privilege protects against unauthorized disclosures of confidential communications between attorney and client. To activate the crime-fraud exception, and thus breach the privilege, the proponent must make a prima facie showing that a prudent person has a reasonable basis to suspect that the defendant is committing or about to commit a crime or a fraud, and that he has communicated with his attorney to further that crime. This is the test established by this court in DECCR, and the focus is narrow. The defendant must be intending or actually committing a crime and seek advice that leads to the deed. In this case, Budimir Radojcic was charged with orchestrating a bank fraud scheme. Before you get into that, counsel, can I ask you a question between the second and the first district here? The Mueller court in the second district would say the best that you can do after putting forth a prima facie case would be an in-camera inspection. And then the first district would say no if there's a prima facie case, and maybe there isn't a prima facie case established yet. You can use an in-camera inspection to support your prima facie case. Is that right? Right. That is the difference in the wording. I mean, it's interesting to take a look at those two positions, because in that very small respect, the appellate court in the first district got the wording right. They're tracking the language of this court's opinion in DECCR. The second district actually got the wording incorrect, but they actually got the spirit of DECCR when they then ordered an in-camera hearing. What the concern is from DECCR is that we don't just open the floodgates to disclosure. We actually take a look at the communications. So you don't have any problem with the proposition that an in-camera inspection can be used to support a prima facie case? No. I think that's fully supported by DECCR, and I think that's a workable test. Okay. But here what we have in terms of supporting whether the crime-fraud exception applies is two separate things. We have a mortgage fraud, and we have real estate transfers. And those real estate transfers were directed by Radojcic. The problem in this case is that without connecting Radojcic to the loan frauds, there is no scheme. Instead, there's two unique events. In support of the crime-fraud exception, the State produced the grand jury testimony of two witnesses, co-defendant Krista Patterson and a straw buyer, Bilyana Aranios. But an examination of that evidence shows that the defendant was not connected to the loan fraud. In fact, both witnesses specifically testified that other people did the false information, the false loan applications, and the false employment verifications, including an admission by Patterson herself that she did most of that. There's also no evidence that there were any communications that led to further criminal activity. Although co-defendant Krista Patterson testified that Radojcic communicated through her to HealthAnd, the only communications that she identified consisted of faxes regarding details about where to be for closings and real estate transfers. Again, we have a crime, and we have real estate transfers. But there's no evidence that Radojcic was actually seeking advice to further the crime. In fact, the State conceded that they did not have enough evidence to make a crime of fascist showing, and the trial court exercised its discretion and agreed that the State had not met its burden that the crime-fraud exception applied. The appellate court, however, ruled that the defendant was involved in the loan fraud and that the legal transfers would not have been possible but for the loan fraud. Thus, Mark HealthAnd's work furthered the loan fraud. The appellate court's decision is both factually and legally incorrect. It's factually incorrect because, of course, we know from the grand jury transcripts the defendant was not involved. It was other people doing the loan fraud. Legally, the appellate court was incorrect because it found legal transfers of real estate actually furthered the loan fraud. This is just a substitution of relevancy for in furtherance. In other words, although Radojcic might have been involved in the real estate transfers and that may have been relevant to the mortgage fraud, because Radojcic did not participate in the mortgage fraud, those transfers could not further that. The appellate court's decision is completely unprecedented. This is the only case that lets you work backwards to infer criminality from legal work. Every other case requires a connection between the defendant and the crime and that the attorney's work actually helped further that crime. Again, because Radojcic was not involved in that loan fraud, his communications to his attorney, either by himself or through Patterson, could not further the loan fraud. The appellate court also erred when it did not defer to the trial court or consider the unique circumstances of this case. For example, at the hearing on the crime fraud exception and whether that applied, that was not the first time that the state conceded its shortcomings in its case. The defendant demanded trial over a year after he was indicted and the first thing the state did was admit that they needed evidence to connect Radojcic to the business activity. At that time, they did that by seeking disqualification of his trial attorney. The trial court wisely denied that request and, in fact, expressed great concern of the timing of that request, noting it was not comforting and, in fact, quite troubling that this was brought right as defendant demanded trial. Fast forward several months later when the trial court found that the crime fraud did not apply, the trial court's aware of the state's repeated concessions and the state's rush to find a witness once the defendant demanded trial. I ask a question. The standard that we're talking about in terms of that Decker adopted, this idea of probable cause, there was an indictment in this case. There was an indictment. Which is a finding of probable cause. And what was the defendant indicted for? He was indicted. I believe there's 52 counts. All of the counts really center around this mortgage fraud. There was, I think, financial institution fraud. There was money laundering. But everything comes back to the foundational crime of this mortgage fraud. So is it fair to say that there was probable cause based on the indictment that the defendant had, in fact, committed the series of crimes that he was charged with? There's probable cause for purposes of the indictment, absolutely. But what we need to make clear is the wording in Decker mentions that the Second Circuit found probable cause and prima facie interchangeable. But no other court has. In fact, every court in Illinois, even the First District, has mentioned the prima facie showing that's required. And this Court, too, has really adopted the prima facie showing, which is more than the probable cause. And we know that because it expressly adopted the ruling in Zolan, which holds that you need a prima facie showing, of course, taking that language from Clark. And this Court has said, you know, in other cases, in other contexts, that, again, in the spectrum of burden of proof, probable cause is lower than a prima facie showing. And that's what the State needs to meet here. In this case, the trial court's ruling was correct because the State had not met its burden. And, in fact, there's no good faith basis for the State's request to pierce the privilege. The crime fraud exception is not a discovery mechanism. The State's interest in gathering evidence does not overcome the attorney-client privilege. If that were the case, privilege would never prevail. However, the appellate court's decision sets the stage for such an outcome. The remedy that the appellate court fashioned is also completely unprecedented. Instead, as I mentioned earlier, unlike the Second District in Mueller, it completely opened the floodgates to discovery without any boundaries. It simply just ordered the co-defendant to testify against Radojcic without bothering to determine what the nature of those communications were. Or even to parse out the communications that actually fell under the crime fraud exception and those that still remain privileged. Every other case, including Decker, cautions courts to not disclose, to be very careful, be reluctant to disclose communications without, at the very least, an in-camera hearing. And that in-camera hearing must actually relate to the discrete crime or fraud. In this case, the mortgage fraud. The appellate court's published decision not only trampled on the attorney-client privilege and this court's careful approach in Decker, but it also completely undermined the trial court's ability to monitor the floodgates and to monitor the evidence that was coming in a trial. With the correct application of the facts to the narrowly focused test in Decker, this court should reverse the appellate court's decision outright. In the alternative, we would request this court to order an in-camera examination of Mark Helfand that's, again, discreetly related to the crime or fraud, either for an ultimate determination of whether the prima facie case has been made or at the very, very minimum to parse out those communications that actually fall under the exception and those, again, that remain privileged. Both you and the State cite to Mueller. Yes. What is the difference in your views on Mueller? I mean, we would argue that Mueller is very important in particular with respect to the remedy. The remedy there, again, although Mueller got the language incorrect, it did not directly track the language of Decker, it still got the spirit right. In other words, you know, the appellate court in reviewing the case said, you know what, we think there might be something going on here, but we can't make this determination. It's up to the trial court. We're going to send it back for at very least an in-camera hearing. And they were very careful to say, we're not even going to say whether there was a prima facie showing. Again, that's up to the trial court. So we cite that decision as important and logical for the points of affording the case to Mueller. It did nothing of the kind. And also, again, for the very discreet remedy of doing an in-camera hearing if the prima facie is showing, you know, if there's a good faith basis, that secondary standard for the in-camera hearing. Thank you. If there are no other questions, thank you very much. Thank you very much. Counsel. May it please the court. Counsel. My name is Leonard Goodman. I represent Mark Helfand, and I also represented him in front of the trial court. I agree with Ms. Wood that the state did not meet its burden to invoke the crime fraud exception and that the appellate court misread this court's opinion in Decker. Under Decker, our view is that the crime fraud exception is narrow and it is a situation where the intended conduct, which is the subject of the consultation with the attorney, is itself illegal. That is, that the client asks the lawyer for help in committing a crime. It does not apply where the exception does not apply where, as in this case, the client has had routine legal work. But unbeknownst to the attorney, the client may be engaged in some criminal scheme which is unwittingly helped by the attorney's work. That's the situation here. And I would like to make just two points in support of our position. First, what this court stated in Decker about the importance of the attorney-client privilege, and in fact, in another case, People v. Knuckles, this court called it the reason dietro of the attorney-client privilege. And this court talks about it's important to enable a person to consult freely and openly with an attorney without any fear of compelled disclosure of the information communicated. This court further stated that a lawyer should be fully informed of all the facts of the matter he is handling in order for the client to obtain full advantage of our legal system. In other words, for our adversarial system to function properly, the lawyer must be able to say to the client, tell me all of the necessary facts that I need to complete my task, and I will protect your confidences. And if the lawyer can't say that, and I think the danger with this expansion of the crime-fraud exception is the lawyer really can't say that. And the key words are the necessary facts for the lawyer to complete his task. For example, if you have a real estate lawyer like Mr. Halfand, who is asked by his client to represent him in the purchase of a condominium, the lawyer needs to know certain facts. He needs to know the facts necessary to complete the sales contract. He doesn't need to know everything about the client's business. And he may need to know that the client has obtained a mortgage, but he doesn't need to know who is going to pay the mortgage. So, for example, he doesn't need to know if the client is, in fact, buying the unit for his son who has bad credit. And the son is actually going to be paying the mortgage, and the son is going to be paying the mortgage, and the client is going to sign the mortgage because the client has better credit. In fact, in that situation, the client is a straw buyer. That is not something that the lawyer needs to know. And, in fact, that act of being a straw buyer is not illegal. Also, another situation would be if the client is going to buy the property to grow marijuana. Now, that would not be the lawyer's business to inquire, what are you going to do with your condominium? That is not a necessary fact for the lawyer to complete his test. But under the appellate court's opinion in this case, the lawyer would need to know that because if the client was planning to grow marijuana, then the attorney's lawful work in helping the client purchase the condominium could be said to be in furtherance of a Here, Mr. Helfand was a real estate attorney, and his client was a developer. He purchased vacant buildings. He renovated them. He converted them into condominiums. He sold those condominiums. On a few occasions, a buyer for a condominium transferred the units into a land trust. All of the work Helfand was asked to perform was lawful and, in fact, routine work for a real estate attorney such as Mr. Helfand. What exactly did he do? Pardon me? What exactly? What exact work did he perform? He did the real estate closings, did the contracts. He did condo conversions. So he would do the declarations and file them with the recorder of deeds. And he set up the land trusts. He did all of these transactions for Mr. Helfand, for Mr. Radochich. But he did not need to know everything about Mr. Radochich's business. And so, for example, if he was representing Mr. Radochich and selling one of his condominium units, he didn't need to know about the buyer's arrangement with the mortgage lender. He didn't need to ask Mr. Radochich whether he has any relationship or any knowledge of whether the buyer made a false statement on a loan application. That would be completely irrelevant to what Mr. Helfand's business was. And it's important to point out that Mr. Helfand was never asked, and the state doesn't contend, that Mr. Helfand was ever asked to advise anyone with respect to any loan application or in any dealings with any mortgage lenders, which is the basis for the criminal case here. And our position is that it would swallow the rule if the exception is expanded to apply this type of situation. And the second point I would like to make, and the second reason why I believe that this court's opinion in Decker is limited to the situation where the subject of the consultation with the lawyer itself is crime, asking the lawyer to help the client commit a crime, is because if you look at this court's opinion, the end of the opinion, the latter part of the opinion, the language there, this court says that once the initial threshold has been met by the party advocating the crime-fraud exception, the in-camera questioning by the judge should begin with a narrow question such as, quote, did your client ask your advice on how to commit this specific illegal act knowing it to be unlawful? In our case, if the state had met its initial threshold and there was an in-camera inspection and the judge asked Mr. Helfand that question, did Mr. Radochich ask your advice on how to commit this specific legal act of loan fraud or mortgage fraud, Mr. Helfand almost certainly would say no. He never discussed anything about his dealings with mortgage companies. My role was only to do closings, condo conversions, and the trust agreements. So this was not relevant. It was not necessary facts. I didn't pry into his business. And so I think that in this case, the exception, this court should make sure that the exception is narrowly tailored as you did in Decker. Thank you. Thank you. Counsel? Good morning, and may it please the court. Counsel, I'm Assistant Attorney General Matthew Becker on behalf of the people of the state of Illinois. And what you've heard in Mr. Becker, you heard me ask opposing counsel a question regarding what I'll characterize as a minor case. Minor conflict between the 1st and the 2nd District regarding the interpretation of Decker. I'm not saying that's why we took the case, but it certainly didn't hurt. I know this is a fact-driven inquiry with regard to the crime fraud exception, but I at least want to have on the record your agreement that you feel the 1st District got it right. My view here is that the 1st District got it right, and that is the State's position. Mueller Industries and Radiac Abrasives before them, those cases do assume that once the prima facie showing is made, then you go to an in-camera review. Now, Radiac Abrasives, that earlier 2nd District case, did not have the benefit of the Zolan decision. And ultimately, it turns out to be incorrect. Now, it's also true that in most cases, and Decker points this out, Zolan before it points it out, in many, many cases, the best and often only evidence of crime or fraud exception is going to itself be potentially privileged. And so the in-camera review will often be necessary. What we have here, however, is someone who is directly involved in acting as a go-between, between attorney and client, telling the grand jury some of this critical information. You also have a straw buyer coming forward and telling the grand jury critical information. And although we can prevail without Agent Hoffman's testimony, his testimony does corroborate some of that and suggests that there have been Federal investigations corroborating that testimony. So the nature of the communications are contained in the grand jury transcripts, is that correct? That's correct in rough outline. Now, there's not specific testimony about what I said in this e-mail on this date. Certainly Krista Patterson did not produce something like a privilege log, and neither has Mr. Radojcik. But in general, she discussed in the parties of Purdue agree that Helfand was involved in the condo conversions, which ultimately increased the appraisable value of the properties and thus increased the amount of money that could be gotten from mortgage lenders. Mr. Helfand was involved in the straw sales and closings. That's his position. Some of them he may not have necessarily performed the closing himself. There's a little bit of talk about that throughout the record. But his position, since Radojcik is asserting the privilege as to these communications, must be that he was consulted about those closings as well. Finally, there are the deeds back, which allowed Mr. Radojcik to retain the properties and continue renting them out and not using them as condos for the straw buyers. And there's some discussion in Patterson's testimony about distribution of proceeds and Mr. Helfand being involved in that. If the standard, looking at the standard review, if the decision whether to conduct an in-camera review within the discretion of the trial court, wouldn't the abuse of discretion standard review be more appropriate? No, Justice Freeman. And the reason is that when you're doing the kind of in-camera review that Decker and Zolan talk about, the crime-fraud exception hasn't been established, whether you use the language of prima facie showing or probable cause. That initial showing hasn't been made. Instead, all that's been made is a lower showing about what in-camera review might reveal. So we're in the world of more typical discovery devices when you're doing that kind of in-camera review. So it makes sense that that would be subject to an abuse of discretion standard. And yet, if extrinsic evidence is used to make the prima facie showing, then the appropriate standard of review would be de novo. And that accords with the way that this Court has treated statutory privileges overall. It accords with the sound development of the law on these privileges. And on the whole, it accords neatly with the low evidentiary threshold that's needed to establish the crime-or-fraud exception. That is to say, if what you need is something to give color to the charge, as Clark says, as Decker quotes, then it doesn't make much sense to have lots of weighing of, for instance, two witnesses or three witnesses' testimony and having the kind of review that you would ordinarily review for abuse of discretion. Now, that said, Justice Freeman, we would prevail on an abuse of discretion standard because when you're reviewing a cold record, when you're reviewing cold transcripts, then if you're going to make an adverse credibility determination or if the trial court were to come out and expressly say, which, by the way, it didn't, that it discredited Patterson's testimony or Aranios's or Hoffman's, then you'd want some reasons about that. Sorensen explains that ordinarily the reason we have deferential review of trial court decision-making is that the trial court is in a position to observe the demeanor of witnesses, listen to the cadence, and to catch that certain inscrutable something that happens during live testimony and figure out whether, despite what the words are, a truth or a nontruth is being uttered. You didn't have that when the trial court reviewed the grand jury transcripts here. And in general, you're not going to have that because there's not really a device other than the kind of in-camera review that was addressed in Zolan for getting live testimony. So in other words, when the showing of the crime or fraud exception is made with the trial court, you're always going to have a cold record or almost always going to have a cold record for the trial court to review. And so the trial court isn't in a better position than the appellate court. Now, here there's another consideration. I believe Justice Tysio asked about the grand jury indictments. Here there would be something odd about saying in picking deferential review for the grand jury's determination on the counts in the indictment, even though the grand jury got to see live testimony. We're instead going to uphold the trial court's unreasoned determination that those grand jurors must have been wrong. Now, turning specifically to the issue of in-camera review again, it's important to note that Zolan actually does countenance this kind of remedy. In Zolan, there was a footnote near the end of the opinion that discussed what would happen on remand in the Ninth Circuit. And very briefly, in Zolan at issue were a series of recorded interviews between counsel and the clients. And these tapes were fairly lengthy. And through various third parties, partial excerpts of those tapes had been obtained and transcripts had been made therefrom. And one of the questions on remand, according to the Supreme Court of the United States, was whether those little excerpts contained enough that the trial court could presume that actually everything on the tapes went to further the crime or fraud. And on remand, the Ninth Circuit decided that that was so. The Ninth Circuit looked at the very limited transcripts that the government had produced and decided that the whole scope of the representation must have been So there was no need for in-camera review beforehand of the entirety of the tapes. And here we have a similar situation where Krista Patterson has testified to her interactions with Health End. She's discussed them in loose detail. But she has talked about how she worked with him to transfer properties between entities that on paper Radojcic didn't own and straw buyers and back to other entities that on paper Radojcic didn't own. And in considering all of this, it's important again to remember the purpose of the crime or fraud exception and the purpose really of the attorney-client privilege itself. McCormick rightly calls the privilege the client's privilege. It's not a privilege for lawyers, although lawyers do sometimes assert it. And all of us should consider carefully the incentive effects of the ruling my opponent is asking for. In particular, Health End has suggested that if the client doesn't disclose the real nature of his business or the reason for his visit, then he can obtain lawyer's services and he should be permitted to use a lawyer to further his conspiracy. That is not the law. That has never been the law concerning the attorney-client privilege. There's an example in Queen v. Cox, an English case that this Court cited in Decker and that's cited in our brief. In Queen v. Cox, the Court uses an important hypothetical. The Court says, suppose on the one hand that a would-be client, A, goes to a lawyer, B, and says, forge me a will in the name of C. Everyone should agree that if the lawyer participates in that, that's not acting in a professional capacity. And really the proposition from the client shouldn't be protected either, even if the lawyer doesn't go along with it. Is there problems with an in-camera inspection in this context? I note that opposing counsel indicated that was the alternative relief that they were seeking, perhaps assessing that you said there's testimony already that would be helpful. If there isn't any necessity, what if their position would be in this or another case that the in-camera inspection would further clarify that testimony and may change the determination of the Court? In this case, it would be very difficult to imagine how that kind of in-camera review would be helpful. If Helfand's primary position is that he didn't know about the full scope of Radojic's operation, then that doesn't really defeat the crime or fraud exception. Again, if Radojic has not revealed to him what his services are being used for and he manages to obtain credit he doesn't qualify for in that manner, that doesn't deserve protection. And so an in-camera review of those kinds of statements by Helfand aren't going to help him. Now, if instead what Helfand wants is to offer rebuttal evidence, then we're beginning to drift towards a kind of mini-trial, and this may make a bit of a mess of the prima facie showing because or rather that standard. And again, we're not wedded to calling this probable cause. If the Court preferred to keep using the nomenclature of prima facie showing, that's fine. But it is low. And if what's going to happen is that Helfand is going to say in-camera, actually, Patterson never reached out to me, none of these transactions happened, these are all lies, then there's going to need to be some kind of weighing of Patterson's grand jury testimony against Helfand's in-camera testimony. We might consider Helfand's own prior conviction for fraud and evaluating the weight of that. And that looks like a very messy proceeding, and that's not ordinarily what we think of with in-camera review. The final kind of in-camera review that's floating out there in the world of civil discovery, but not really in the crime-fraud line of cases, you might have a complex universe of documents in another case. But maybe some of those documents clearly go to the criminal schemes, and some documents might pertain to other transactions that are entirely legitimate, and there might be a need to parse those documents. But it's hard to imagine that kind of review being necessary here. Again, everything about the condo conversions, at least for the properties listed in the indictment here, everything about the straw sales and closings, everything about the deeds back and the distribution of proceeds, this all goes towards Radojcik's overall scheme of obtaining credit that he can't otherwise obtain and keeping his name out of the trail so that he can handle assets and income without having to report it and without having it be subject to these federal tax liens that are potentially looming over him. So even if in some future case, in-camera review might be appropriate, it would not be appropriate in this case. I recognize that in theory, on the stand, when Halfand is testifying, it's possible that a question could invite him to discuss a transaction that's outside the scope of what we've been discussing here. And if that were true, perhaps he could assert the privilege with respect to that specific transaction at that time. I'm imagining that's not going to happen. That brings us to another consideration that you should consider in evaluating the burden of proof, the standard of review, and the way to apply it to these facts. Relevance is always going to be a soft limitation on what the State is going to be able to elicit. So in some of the more dramatic hypotheticals that have been discussed here, for instance, acquiring a property to use for a drug business, one of the questions that will arise is what relevance that will have for the drug prosecution. If it turns out to be the case that there was already an existing agreement to set up a drug business and someone acquires a property as a substantial step towards setting up that drug business, then that's going to meet the standards both of furtherance and relevance. Another soft limitation you have here on, even when the crime or fraud exception is established, is weighing of evidence for probative value and unfair prejudice. So in some of the more dramatic hypotheticals, it may well be that some of the information about communications obtained in furtherance of the crime or fraud will be sufficiently prejudicial that it will be excluded on that ground. And finally, of course, we have the client's knowledge, which is built into the test for the crime or fraud exception. If a client is obtaining properties or obtaining a divorce settlement or obtaining some other money to run an illegal enterprise, then your concern for that client and that client's need to protect his communications should be at its lowest ebb. And again, furtherance is a familiar concept anyway. This Court doesn't need to do anything new in order to affirm the appellate court's decision here. Furtherance as a concept has a long history in conspiracy law, in accountability, in more historical aiding and abetting and accomplice liability law. And furtherance of a criminal objective has never meant would be criminal in and of itself. So, for instance, I can further a bank robbery by driving someone to the bank robbery site knowing that I'm doing so, and even though I can ordinarily drive my friend around, I can't do it for that purpose. So, again, if there are no further questions, we are asking the Court to affirm the decision of the First District in full, and at the very least, in the alternative to remand for in-camera review of Helfand's proposed testimony. Thank you. Thank you. Any rebuttal? Thank you. Let's get back to what we're talking about here, which is the application of the crime-fraud exception. We're not talking about soft limitations of whether evidence comes in under different standards and different areas of review. We're talking about whether the crime-fraud exception breaches the attorney-client privilege. And this Court has set out a very narrow test, one that the State still, I thought fourth time might be the charm. It is not. The State still has yet to connect Radojcic to any crime or fraud and any communications, identify any communications that he made with his attorney to further that crime or fraud. Every single activity that the State got up here and recited was legal activity relating to the real estate transfers. And again, it's no argument to say that because Radojcic invoked his rights to attorney-client privilege, that that necessarily means that any communications are relating to properties that also relate to the mortgage fraud. I think that's a stretch, number one, because again, there are so many holes in the State's evidence. The only thing that they put forward is the grand jury transcript of Krista Patterson, what we have in her, and the straw buyer, Bilyana Aranios. But what we have in those two testimonies is A, from Patterson, simply identifying faxes in terms of that communication, faxes that just simply go to directions regarding the closing. I mean, how is that a communication that furthers a fraud? It's really not. Bilyana Aranios said that Mark Helfand maybe was at a couple closings. He might not have even done every single closing that she was involved with. So for the State to say that because we're invoking the privilege, that means everything is relevant to the mortgage fraud, that's completely ridiculous and it turns the State's burden on its head. Again, with respect to the grand jury proceeding, there what we're talking about is whether there's an ultimate issue for trial. I mean, the grand jury decided that sure, there was, we can go to trial. But it's no big surprise that criminal defendants very often beat grand jury indictments. Once they go to, say, a hearing on a motion to quash arrest, the State is now subject to a slightly higher evidentiary burden and criminal defendants can get out of that indictment all the time. Contrary to the State's position, as I believe Justice Thomas, you mentioned, this is a fact-driven inquiry. I mean, necessarily there has to be at least some deference to the trial court's ruling and the trial court's knowledge of what's going on in the case. Even though the trial court is simply reviewing cold documents, that doesn't break any sort of discretionary power that the trial court has. Again, here, it's cold documents. Kagan, could you explain? I'm really not sure I understand what you mean by that. So what occurred here was the trial court read the grand jury testimony. We can read the grand jury testimony. Sure. So that sounds like de novo review. What is the, there was no, at this point, no witnesses called, no credibility determinations made. So what are you suggesting that the trial court could do that we can't do? Well, what the trial court, and you can do this as well, although what needs to happen is some sort of deference to the trial court's decision. But what's important here is when making a determination for whether the crime fraud exception applies, the trial court looks at the tenor of the case and decides, knowing everything that it knows coming up to this point, whether the State has a good faith basis to seek the crime fraud exception. And in this case, the State does not. I mean, it has conceded multiple times that it's looking for that key witness to actually connect Rejoicech to the crime, the loan fraud. It first sought disqualification of his trial attorney. When that didn't work, it now seeks the crime fraud exception to get at his former attorney to testify against him. So knowing all of that, the trial court was not persuaded that the State is bringing this in good faith or that the State has met its burden. So at the very least, I mean, there has to be at least some acknowledgement of the proceedings that led up to the determination of whether the crime fraud exception applies. And I would argue that that's at the very least discretionary. And the language in Decker and Zolan, which says that the decision to conduct an in-camera review is discretionary, further supports that. If there are no other questions, thank you very much again. Thank you. Thank you. I'd like to just address a couple points. First, Mr. Becker's argument. He suggests that the grand jury transcript clearly shows that Mr. And in fact, that is not correct. And the appellate court never made such a finding. The appellate court found that Health End was, that the grand jury transcript shows that Health End was consulted and tasked with doing lawful, routine legal work. That is, closings, transfers into trust, which is a thing that real estate lawyers do, and condo conversions. And this, and again, I think it's very important to stress this point, that if this court were to uphold the appellate court, you would be expanding the crime fraud exception beyond the traditional thing, which was where the lawyer is directly consulted to commit a crime. This is not the case here. The evidence shows that the lawyer was consulted to do routine legal work for a client. Mr. Becker further urges this court to find that in-camera review is not appropriate in this case. And I would suggest that, in fact, this type of case, if there was any doubt in this court's mind whether the communications between Mr. Radochich and Mr. Health End or the purposes of committing a crime, that an in-camera inspection would be critical in this case. And I think the reason why the state doesn't want it is because the state knows that the answer to the question that this court suggested that the court would ask in Decker would be no. And that question, again, is whether did your client ask your advice on how to commit this specific act of mortgage fraud or loan fraud, knowing it to be unlawful. And there is simply no evidence in the record to suggest that Mr. Radochich ever asked Mr. Health End for any advice about loan fraud. Now, Mr. Health End may have known, and Mr. Health End did hundreds of closings from Mr. Radochich. He may have known that in a couple situations there was a relationship between Mr. Radochich and a buyer. But as I said earlier, the fact that the buyer may have a relationship with the seller or may be a straw buyer is not in itself illegal. What the crime here is, is the missed false statements on a loan application. And that is something that there is simply no evidence that Mr. Health End had any knowledge of or was consulted about. And the one last thing I would like to address in Mr. Becker's comments, and that is that he suggested if there's evidence that the client was involved in criminal activity, you shouldn't be so concerned about the attorney-client privilege. And that's certainly the case here. There's evidence. There's probable cause to believe Mr. Radochich was involved in loan fraud. But again, I would suggest the attorney-client privilege protects the innocent and the guilty. And people that are involved in crime certainly have a right to go and consult with an attorney and have those communications be protected. And I think that's an important point. And I think this Court should consider it in upholding the finding of the trial court. Thank you. Thank you. Case numbers 114-197 and 114-214, People v. Budimir-Radochich, et al. is taken under advisement as agenda number two. We're going to take a brief recess. Mr. Marshall, the Ombudsman Court stands in recess until 11 a.m.